IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FINSERV CASUALTY CORP.,           §
RSL FUNDING, LLC, and             §
THE FELDMAN LAW FIRM, LLP,        §
                                  §
            Plaintiffs,           §
                                  §
v.                                §          CIVIL ACTION NO. H-10-0264
                                  §
SETTLEMENT FUNDING, LLC           §
D/B/A PEACHTREE SETTLEMENT        §
FUNDING and GREENBERG             §
TRAURIG, LLP,                     §
                                  §
            Defendants.           §

### MEMORANDUM OPINION AND ORDER

FinServ Casualty Corp., RSL Funding, LLC ("RSL"),[1] and The Feldman Law Firm, LLP bring this action against Settlement Funding, LLC d/b/a Peachtree Settlement Funding ("Peachtree") and Greenberg Traurig, LLP alleging wrongful execution, conversion, theft of property, and trespass arising from the defendants' execution of a writ of judgment at RSL's offices in Houston, Texas, on January 19, 2010.  The plaintiffs seek monetary damages and injunctive relief. Pending before the court are Defendant Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion to Dismiss and, in the Alternative, Motion to Abstain (Docket Entry No. 6), Defendant Greenberg Traurig, LLP's Motion to Dismiss (Docket Entry No. 7),

---

[1]The court will refer to the three plaintiffs collectively as "RSL" when referring to their pleadings and arguments in this action.

Defendant Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion to Quash, Motion for Protective Order, and Motion to Stay Discovery (Docket Entry No. 14), and Defendant Greenberg Traurig, LLP's Motion to Quash, Motion for Protective Order, and Motion to Stay Discovery (Docket Entry No. 17). For the reasons explained below, the court will grant Greenberg Traurig's motion to dismiss and will deny Peachtree's motion to dismiss, but will stay the action pending resolution of the state court action.

## I.  <u>Factual and Procedural Background</u>

This action concerns a dispute over the ownership of office equipment seized by the defendants from RSL's offices in Houston on January 19, 2010. Peachtree arranged for Harris County constables to seize the property under a writ of execution against Rapid Settlements, Ltd. Greenberg Traurig oversaw the execution of the writ as Peachtree's attorney. The plaintiffs argue that all of the seized property belonged either to RSL or The Feldman Law Firm rather than Rapid Settlements, and that Peachtree therefore had no right to seize the property because RSL and The Feldman Law Firm were not named on the writ. FinServ claims to have a security interest in the seized property.

Jurisdiction is based on diversity. FinServ Casualty Corp. is an Anguillan corporation with its principal place of business in

Anguilla, British West Indies.[2]   RSL Funding, LLC is a Texas limited liability company with its principal place of business in Houston, Texas.[3]   The Feldman Law Firm, LLP is a Texas limited liability partnership with its principal place of business in Houston, Texas.[4]   Defendant Peachtree is a Florida limited liability company with its principal place of business in Florida.[5] Defendant Greenberg Traurig is a New York limited liability partnership with its principal place of business in New York; the two partners that make up Greenberg Traurig have their principal places of business in New York and Florida.[6]   Greenberg Traurig is the law firm that represented Peachtree in the state court action. The defendants do not dispute that diversity jurisdiction exists.

**A.    The State Court Judgment**

Peachtree, RSL, and Rapid Settlements are or have been in the business of purchasing structured settlements from individuals in exchange for a discounted lump sum payment.   As discussed below, RSL and Rapid Settlements are closely related companies.   From 2006

---

[2]Original Complaint and Application for Injunctive Relief ("Complaint"), Docket Entry No. 1, ¶ 1.

[3]<u>Id.</u> ¶ 2.

[4]<u>Id.</u> ¶ 3.

[5]<u>Id.</u> ¶ 4.

[6]<u>Id.</u> ¶ 5.

to 2009 Peachtree and Rapid Settlements were engaged in litigation over the rights to the structured settlement payments of an annuitant named William Maxwell.[7]  On November 18, 2009, the 113th Judicial District Court of Harris County, Texas, entered a final judgment decreeing that Peachtree has the sole contractual right to receive a portion of Maxwell's structured settlement payments, and awarding $171,863.91 in costs and attorney's fees to Peachtree.[8] On January 4, 2010, Peachtree obtained a writ of execution for the judgment.[9]  RSL does not contend that Rapid Settlements or any other party ever attempted to pay this judgment.  Peachtree's attempt to collect on the judgment gives rise to this litigation.

RSL, Rapid Settlements, and the Feldman Law Firm all operate or have operated in the same or neighboring suites in an office building at 5051 Westheimer Road in Houston, and all have been managed in some capacity by the same individual, Stewart Feldman.[10] The parties dispute the current legal status of Rapid Settlements.

---

[7]See Final Judgment, Exhibit A to Defendant Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion to Dismiss and, in the Alternative, Motion to Abstain ("Peachtree's Motion to Dismiss"), Docket Entry No. 6.

[8]Id.

[9]Writ of Judgment, Exhibit B to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[10]Filing Documents from the Texas Secretary of State's Office, Exhibits K and L to Peachtree's Motion to Dismiss, Docket Entry No. 6.

-4-

RSL's Complaint states that Rapid Settlements "essentially ceased doing business around January 1, 2009."[11]  RSL further states:

> 21.  In late 2008/early 2009 Rapid Settlements, Ltd. ceased conducting its business.  By early 2009 RSL Funding acquired from Rapid Settlements, Ltd.'s creditors certain assets once owned by Rapid Settlements, Ltd., and RSL Funding leased furnished offices from the Law Firm known as Suite 1875, 5051 Westheimer Road, Houston, Texas 77056.[12]

RSL contends that Rapid Settlements had no assets at the time of the state court judgment or thereafter, and therefore there was no property for Peachtree to seize under its writ of execution.

Peachtree has disputed RSL's assertion that Rapid Settlements is out of business.  Peachtree has attached as exhibits screenshots from the website of the Texas Secretary of State's office that list Rapid Settlements as a Domestic Limited Partnership in existence, and list the partnership's address as 5051 Westheimer, Suite 1875, Houston, Texas.[13]  This is the address where the writ was executed.  Stewart Feldman is listed as the registered agent of Rapid Settlements, with an address at 5051 Westheimer, Suite 1850.[14]  Peachtree stated in a state court filing that it executed the writ against Rapid Settlements in part because Rapid Settlements has not

---

[11]Original Complaint and Application for Injunctive Relief ("RSL's Complaint"), Docket Entry No. 1, ¶ 8.

[12]Original Complaint and Application for Injunctive Relief ("RSL's Complaint"), Docket Entry No. 1, ¶ 21.

[13]Business Organizations Inquiry – Rapid Settlements, Ltd., Exhibit C to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[14]Id.

declared bankruptcy and it has continued to appeal the state court judgment against it, which suggest, Peachtree argues, that the company is still in existence.[15]  Peachtree is pursuing discovery on these issues in the state court action.[16]

**B.    The Execution of the Writ**

On January 19, 2010, Peachtree's attorney, Paul Brown, who works for Greenberg Traurig, executed the judgment writ on property in the offices at 5051 Westheimer, Suite 1875.  The parties offer different accounts of how the seizure of property occurred.

RSL's Complaint states:

9.    On January 19, 2010, at the offices of the Law Firm (5051 Westheimer, Suite 1850) and RSL Funding (5051 Westheimer, Suite 1875), Houston, Harris County, Texas, Defendants Peachtree and Greenberg Traurig served a writ of execution against Rapid Settlements, Ltd. . . .  In the process of executing the writ, Defendants Peachtree and Greenberg Traurig wrongfully seized and removed assets owned by entities other than Rapid Settlements, Ltd.  The Property removed belongs to either the Law Firm or RSL Funding.  The assets seized are not assets owned by, leased by, or used by debtor, Rapid Settlements, Ltd. In taking these wrongful actions, Peachtree and Greenberg Traurig conspired to bring about this improper and wrongful result.

. . .

14.  Defendant Greenberg Traurig, on its own behalf and on behalf of its client, Peachtree, was repeatedly informed orally and in writing throughout the day of

---

[15]Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion for Enforcement of Judgment, Exhibit U to Peachtree's Motion, Docket Entry No. 6, p. 3.

[16]Id.

-6-

January 19, 2010 – even prior to the property being removed from the premises – that the assets being executed upon and removed from the premises did <u>not</u> belong to Rapid Settlements, Ltd. At approximately 10:20 a.m. on January 19, 2010, before Defendants' execution of the assets had begun, Harold Levine, controller of the Law Firm, informed both Paul Brown, an attorney with Greenberg Traurig and who was overseeing Defendants' wrongful acts during execution of the writ, and the constables that the assets being seized were assets owned by persons <u>other than</u> Rapid Settlements, Ltd. . . . Nevertheless, Peachtree and its attorneys continued to seize assets without regard to their ownership and removed same from the building, disrupting RSL Funding's staff.

15. At approximately 10:30 a.m. on January 19, 2010, before the execution upon the assets had begun, Randy Bond, an attorney with the Law Firm, hand delivered a writing to Defendant's counsel, Paul Brown, directing that the execution on the assets cease. Peachtree's counsel was provided Rapid Settlements, Ltd.'s balance sheet of December 31, 2009 reflecting that no tangible assets are owned by Rapid Settlements, Ltd. At approximately 11:37 a.m. that morning, Bond's directive to cease and desist on the writ of execution together with Rapid Settlements, Ltd.'s balance sheet of December 31, 2009 showing that no tangible assets are owned by Rapid Settlements, Ltd. were faxed to the offices of Defendant Greenberg Traurig, Defendant Peachtree's counsel in connection with the then pending execution against Rapid Settlements, Ltd. and the wrongful execution against the Plaintiffs herein. . . . Despite receiving written notices that Suite 1875 did not contain assets owned by Rapid Settlements, Ltd., and that assets of the Law Firm and RSL Funding were being wrongfully seized, Defendants continued to seize and remove the property from Suite 1875 that belonged to Plaintiffs the Law Firm and RSL Funding.

16. At approximately 1:00 p.m. on January 19, 2010, Stewart Feldman informed the constables and Peachtree's attorney that the assets being executed upon were not the assets of Rapid Settlements, Ltd. This notice did not deter the continuation of the wrongful seizure of property owned by Plaintiffs RSL and the Law Firm.

17. At 1:45 p.m. on January 19, 2010, Mr. Levine hand delivered a "To Whom It May Concern" letter to Deputy

> Molina to once again advise the constables that none of
> the assets located in Suite 1875 belonged to Rapid
> Settlements, Ltd., but were all owned by either the Law
> Firm, or by RSL Funding . . .[17]

In summary, RSL alleges that none of the seized assets belonged to

Rapid Settlements, and that employees of RSL and The Feldman Law

Firm gave clear notice of this fact to Brown, and thereby to

Greenberg Traurig and Peachtree, prior to execution of the writ.

Peachtree offers a somewhat different account, arguing that

Brown had reason to believe that the assets did in fact belong to

Rapid Settlements.  In response to the documents that RSL sent to

Peachtree during the execution of the writ, Peachtree's attorney

sent a letter to Stewart Feldman on January 19, 2010, stating that

Brown had explained to Feldman at the time of execution that:

> (1) the Texas Secretary of State Records shows that Rapid
> is located at Suites 1875 and 1850 at 5051 Westheimer,
> Houston, Texas 77056:  (2) the sign on the door of the
> suite where the writ of execution was served listed Rapid
> as the occupant; (3) the Constable videotaped evidence of
> checks, operations manuals, and numerous other documents
> with the name of Rapid on them; and (4) several of your
> employees stated that they worked for Rapid.  In response
> you and Ms. Hatcher [another attorney at the Feldman Law
> Firm] merely told Mr. Brown that (1) the contents of the
> Suite did not belong to Rapid; and (2) Rapid has no
> assets.  Mr. Brown asked for some type of verification of
> this, and no one at Rapid provided any such
> verification.[18]

---

[17]Original Complaint and Application for Injunctive Relief,
Docket Entry No. 1, ¶¶ 9, 14-17.

[18]Letter from L. Bradley Hancock to Stewart Feldman,
January 19, 2010, Exhibit F to Peachtree's Motion to Dismiss,
Docket Entry No. 6.

To summarize, the parties dispute whether the seized property belonged to Rapid Settlements, and whether Peachtree had good reason to conclude at the time of execution that the property belonged to Rapid Settlements.

**C.   Post-Execution Proceedings**

On January 19, 2010, the Feldman Law Firm and RSL filed in Harris County District Court an application for a temporary restraining order and injunctions ordering the return of all of the seized property.[19]   On January 20, 2010, the Presiding Ancillary Judge ordered the parties to appear on February 2, 2010, for a show cause hearing in the 113th Judicial District Court, the same court that had heard the state court action between Peachtree and Rapid Settlements.[20]   On January 28, 2010, the same day on which this action was filed, The Feldman Law Firm and RSL filed a notice of nonsuit in the state court action, and thus the state court show cause hearing never took place.[21]   The Constable Sale of the

---

[19]The Feldman Law Firm LLP's and RSL Funding, LLC's Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, Exhibit Q to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[20]Order Setting Show Cause Hearing, Exhibit R to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[21]Notice of Nonsuit, Exhibit S to Peachtree's Motion to Dismiss, Docket Entry No. 6.

disputed property took place on February 3, 2010, and Peachtree purchased all of the property with a credit bid.[22]

While these legal proceedings were ongoing the parties exchanged adversarial correspondence. On January 20, 2010, Peachtree's attorney sent a letter to Feldman stating that Peachtree would return the seized assets if Rapid Settlements filed a supersedeas bond, or if any party filed a bond for the amount of judgment plus costs.[23]  On January 22, 2010, an attorney from the Feldman Law Firm sent a letter to Peachtree demanding the immediate return of all of the property removed on the 19th.[24]  On January 26, 2010, RSL sent Peachtree another letter demanding the return of the seized property, and asserting that FinServ Casualty Corporation and A.M.Y. Property and Casualty Insurance Corporation are "secured parties with a first priority security interest in and to the Property."[25]

On February 2, 2010, Peachtree filed a Motion for Enforcement of Judgment in the original state court action, seeking post-

---

[22]Peachtree's Motion to Dismiss, Docket Entry No. 6, p. 3.

[23]Letter from L. Bradley Hancock to Stewart Feldman, January 20, 2010, Exhibit G to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[24]Letter from John Craddock to L. Bradley Hancock, January 22, 2010, Exhibit D to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[25]Letter from John Craddock to L. Bradley Hancock and others, January 26, 2010, Exhibit M to Peachtree's Motion to Dismiss, Docket Entry No. 6.

judgment discovery from the various entities managed by Feldman.[26] On February 22, 2010, the state court judge ordered Rapid Settlements to make available a corporate representative for a deposition and to produce documents requested by Peachtree.[27]  Post-judgment proceedings in the state court action are ongoing.


**D.   Procedural History**

RSL brought this action on January 28, 2010, alleging wrongful execution, conversion, theft of property, and trespass (Docket Entry No. 1).  On February 22, 2010, Peachtree filed a Motion to Dismiss and, in the Alternative, Motion to Abstain (Docket Entry No. 6).  On the same day Greenberg Traurig filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that RSL has failed to state a claim upon which relief can be granted (Docket Entry No. 7).  RSL has responded to both motions (Docket Entry Nos. 9 and 10).  On March 19, 2010, Peachtree filed a Motion to Quash, Motion for Protective Order, and Motion to Stay Discovery (Docket Entry No. 14), and Greenberg Traurig filed essentially similar motions (Docket Entry No. 17), to halt discovery proceedings against them while the motions to dismiss are

---

[26]Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion for Enforcement of Judgment, Exhibit U to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[27]Order, Exhibit V to Peachtree's Motion to Dismiss, Docket Entry No. 6.

pending.  RSL has responded to both motions (Docket Entry Nos. 22 and 23).

## II.  **Greenberg Traurig's Motion to Dismiss**

Greenberg Traurig argues that all of RSL's claims against it should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Greenberg Traurig argues that it is immune from RSL's claims under the Texas qualified immunity doctrine because it undertook the actions upon which RSL bases its claims in the course of performing legal duties for a client.

## A.  **Applicable Law**

### 1.  Rule 12(b)(6)

Rule 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss requires the court to accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 996 & n.1 (2002) (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S. Ct. 1160, 1161 (1993)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. at 997.  A

-12-

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  Once a claimant adequately states a claim, he may support this claim "by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 1969. The claimant's "obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 1964-65 (internal quotation marks and brackets omitted).

In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the pleadings, with two exceptions.  In <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of certain documents the defendant attached to a motion to dismiss.  The Fifth Circuit has "restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." <u>Scanlan v. Tex. A & M Univ.</u>, 343 F.3d 533, 536 (5th Cir. 2003).  Courts may also refer to matters of public record when deciding a Rule 12(b)(6) motion.  <u>Norris v. Hearst Trust</u>, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

2.   <u>Choice of Law</u>

As a federal court sitting in diversity, the court applies the choice-of-law rules of the forum state. <u>Caton v. Leach Corp.</u>, 896 F.2d 939, 942 (5th Cir. 1990). Texas, the forum state, follows the "most significant relationship" approach in choice-of-law analyses. <u>Hughes Wood Prods., Inc. v. Wagner</u>, 18 S.W.3d 202, 205 (Tex. 2000). This action concerns the seizure of property from an office in Texas pursuant to a writ of execution issued by a Texas state court. Texas therefore has the most significant relationship to this dispute of any state. Both parties have cited to Texas law. The court concludes that the parties' claims are governed by Texas law.

**B.   RSL's Claims**

RSL brings claims against Greenberg Traurig and Peachtree for wrongful execution, conversion, theft of property, and trespass.[28] All of these claims are based on the actions taken by Greenberg Traurig and Peachtree in executing the writ of judgment on the office property in Suite 1875.

Greenberg Traurig argues that even if all of RSL's allegations are taken as true that RSL still has not stated a plausible claim to relief. Greenberg Traurig argues that it is immune from

---

[28]Original Complaint and Application for Injunctive Relief, Docket Entry No. 1, ¶¶ 22-29.

liability to RSL for the actions upon which RSL bases its claims because Greenberg Traurig undertook the actions while performing legal duties for its client, Peachtree, and thus its actions are protected by the Texas qualified immunity doctrine.

## C.   The Texas Qualified Immunity Doctrine

Under the Texas qualified immunity doctrine, attorneys are generally not liable to a third party for actions taken in connection with representing a client. Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 406 (Tex. App. -- Houston [1st Dist.] 2005, pet. denied); Toles v. Toles, 113 S.W.3d 899, 910 (Tex. App. -- Dallas 2003, no pet.). "A lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages." Likover v. Sunflower Terrace II, Ltd., 696 S.W.2d 468, 472 (Tex. App. -- Houston [1st Dist.] 1985, no writ). The qualified immunity doctrine is designed to promote zealous legal representation. Alpert, 178 S.W.3d at 405 ("If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest.")

So long as the attorney is engaged in the conduct at issue as part of the discharge of his duties in representing his client, that conduct is not independently actionable, even if frivolous or

without merit.   _Alpert_, 178 S.W.3d at 406.   In other words,
"[u]nder Texas law, attorneys cannot be held liable [to a
non-client] for wrongful litigation conduct." _Id._ at 406 (quoting
_Renfroe v. Jones & Assoc._, 947 S.W.2d 285, 288 (Tex. App. -- Fort
Worth 1997, writ denied)).  In _Renfroe_, in which the court affirmed
a summary judgment dismissing an action brought against an attorney
for wrongful garnishment, the court stated:

> This rule focuses on the type of conduct in which the
> attorney engages rather than on whether the conduct was
> meritorious in the context of the underlying lawsuit.
> Accordingly, the present case turns on whether the
> attorney's conduct was part of discharging his duties in
> representing his client. If the conduct is within this
> context, it is not actionable even if it is meritless.
> 947 S.W.2d at 287-88 (internal citations and quotations
> omitted).

Likewise, the Texas Appeals Court in _Alpert_ held that qualified
immunity focuses on the nature of the attorney conduct at issue,
rather than on "whether the conduct was meritorious in the
underlying lawsuit." _Alpert_, 178 S.W.3d at 406; _see also_ _Bradt v._
_West_, 892 S.W.2d 56, 71-72 (Tex. App. -- Houston [1st Dist.] 1994,
writ denied) (concluding no cause of action existed against
attorney for frivolous motions because there is no duty to be
correct in legal arguments).  The types of conduct to which
immunity applies are those involving "the office, professional
training, skill, and authority of an attorney." _Miller v._
_Stonehenge/Fasa-Texas, JDC, L.P._, 993 F. Supp. 461, 464 (N.D. Tex.

1998) (citing <u>Taco Bell Corp. v. Cracken</u>, 939 F. Supp. 528, 532
(N.D. Tex. 1996)) (applying Texas law).


1. <u>Exceptions to Qualified Immunity</u>

An attorney's protection from liability arising out of his
representation of a client has limits.  An attorney's immunity from
such suits is "qualified" in that an attorney may be liable to a
third party despite the absence of legal privity or independent
duty.  <u>Alpert</u>, 178 S.W.3d at 406.  "[A]n attorney is liable if he
knowingly commits a fraudulent act that injures a third person, or
if he knowingly enters into a conspiracy to defraud a third
person."  <u>Likover</u>, 696 S.W.2d at 472.

In <u>Likover</u>, an attorney was held liable to a third party for
damages for advising his client to engage in fraudulent and
coercive conduct.  <u>Id.</u> at 472-74.  <u>Likover</u> involved the sale of an
apartment complex.  The sellers lied about the status of
architectural plans and specifications they promised to provide,
and they failed to convey title to the property.  <u>Id.</u> at 469-71.
The sellers' attorney advised his clients not to convey title to
the property in order to gain leverage over the buyer.  The
sellers' attorney informed the buyers that they would have to pay
an additional $400,000 over the contract amount to complete the
transaction.  <u>Id.</u> at 473-74.  The <u>Likover</u> court held that on these
facts, the attorney could be held liable to the buyers for

-17-

conspiracy to commit fraud because "where a lawyer acting for his client participates in fraudulent activities, his action in so doing is 'foreign to the duties of an attorney.'" <u>Id.</u> at 472-74 (quoting <u>Poole v. Houston & T.C. Ry.</u>, 58 Tex. 134, 137 (1882)); <u>accord</u> <u>Toles</u> at 911 ("When an attorney acting for his client participates in fraudulent activities, his action is 'foreign to the duties of an attorney.'").  The court stated that an attorney "could not shield himself from liability on the ground that he was an agent, because no one is justified on that ground in knowingly committing a willfull [sic] and premeditated fraud for another." <u>Likover</u>, 696 S.W.2d at 472.

In a more recent case, <u>Alpert</u>, the Texas Court of Appeals held that actions are "foreign to the duties of an attorney" only when "a lawyer participates in independently fraudulent activities." 178 S.W.3d at 406.   To be liable under this formulation, an attorney must "knowingly commit[] a fraudulent act outside the scope of his legal representation."  <u>Id.</u>  In <u>Alpert</u>, the court dismissed a plaintiff's claim of conspiracy to defraud against two attorney defendants because the defendants' actions that allegedly constituted the conspiracy -- "the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations" -- were "acts taken and communications made to facilitate the rendition of legal services," and not conduct "foreign to the duties of an attorney."

Id. at 408.   Since none of the allegedly fraudulent acts were independent from the actions an attorney would ordinarily undertake on behalf of a client, the plaintiff's allegations of conspiracy did not defeat the attorneys' qualified immunity.   In a later federal action involving related claims and parties, this court dismissed the plaintiffs' claims of aiding and abetting a breach of fiduciary duty against the attorney defendants because "[t]he alleged actions by the Lawyer Defendants occurred in the course of their legal representation of [the client]," and therefore claims based on those actions were barred under the Texas qualified immunity doctrine.   Alpert v. Riley, 2008 WL 304742, *18 (S.D. Tex.).

The Texas Court of Appeals has also stated that attorneys are not protected from liability to third parties "for every tort committed by a lawyer that may be tangentially related to his professional role or which may occur during litigation." Dixon Fin. Servs., Ltd. v. Greenberg, Eden, Siegmyer & Ashman, P.C., 2007 WL 4099512, at *7 (Tex. App. -- Houston [1st Dist.] Nov. 15, 2007, no pet.).   For example, an attorney who assaults the opposing party during trial or contract negotiations is not protected from liability to that party.   Id.

-19-

**D.   Were Greenberg Traurig's Actions Protected by Qualified Immunity?**

Greenberg Traurig argues that all of the actions upon which RSL bases its claims against Greenberg Traurig are actions covered by the protection of the Texas qualified immunity doctrine.

First, RSL's Complaint does not refer to any actions by Greenberg Traurig outside of Greenberg Traurig's duties in representing Peachtree.  RSL bases its claims against Greenberg Traurig for wrongful execution, conversion, theft, and trespass entirely on Greenberg Traurig's actions undertaken in executing the writ of judgment on Peachtree's behalf.  RSL does not allege that it was harmed by any action taken by Greenberg Traurig independent of the actions it took while executing the writ for Peachtree.

In Texas the applicability of qualified immunity depends on the nature of the attorney conduct at issue, rather than on "whether the conduct was meritorious in the underlying lawsuit." Alpert, 178 S.W.3d at 406.  The nature of Greenberg Traurig's actions upon which RSL bases its claims was that of attempting to collect on a judgment for a client.  Collecting on a judgment for a client is a duty commonly performed by attorneys, and it is a duty involving "the office, professional training, skill, and authority of an attorney." See Miller, 993 F. Supp. at 464.  RSL has not alleged that Greenberg Traurig was not performing legal duties for Peachtree when it executed the writ, not has it alleged that the writ was invalid.  In fact, RSL's Complaint incorporates

-20-

the Writ of Execution, which states in the bottom left corner that the last known address of the Judgment Debtor is 5051 Westheimer Street, Suite 1850 or Suite 1875.[29]   The court concludes that executing a writ of judgment at the last known address of the debtor is within the normal scope of an attorney's duties.

RSL's Complaint challenges the merits of Greenberg Traurig's actions in executing the writ.  It alleges that Greenberg Traurig failed to perform adequate investigation before the execution to determine whether the property in Suite 1875 actually belonged to Rapid Settlements, and that Greenberg Traurig failed to locate the UCC filings perfecting the security interests of third parties in the property.  It alleges that Greenberg Traurig continued to execute the writ even after receiving oral and written notice that the property in Suite 1875 did not belong to Rapid Settlements. Although the Complaint certainly alleges that Greenberg Traurig's conduct was wrongful, "[u]nder Texas law, attorneys cannot be held liable [to a non-client] for wrongful litigation conduct." Renfroe, 947 S.W.2d at 288.   Greenberg Traurig may have been negligent in its preparation for the execution, and the execution itself may have been wrongful, but there is no allegation that Greenberg Traurig's actions were not conducted as part of the discharge of its duties to Peachtree.  Texas courts have held that

---

[29]Original Complaint and Application for Injunctive Relief, Docket Entry No. 1, ¶ 9 ("The Writ of Execution is attached as Exhibit 2 and is incorporated herein by reference.").

so long as the attorney is engaged in the conduct at issue as part of the discharge of his duties in representing his client, that conduct is not independently actionable, even if frivolous or without merit. <u>Alpert</u>, 178 S.W.3d at 406. The court concludes, therefore, that Greenberg Traurig's actions as alleged in RSL's Complaint are not independently actionable.

One statement by the Texas Supreme Court indicates that there are situations in which a plaintiff could state a valid claim for conversion against an attorney for actions taken on his client's behalf. In <u>Chu v. Hong</u>, 249 S.W.3d 441, 446 (Tex. 2008), the Court stated, "An attorney who personally steals goods or tells lies on a client's behalf may be liable for conversion or fraud in some cases." The court concludes, however, that the facts of this action are not the type of situation indicated in <u>Chu</u>. First, there is no allegation that the Greenberg Traurig attorney "personally stole" the property in question; the Complaint makes clear that the items were taken by constables carrying out a writ of execution overseen by Greenberg Traurig. The significant distinction here is that it is never properly within an attorney's legal duties to "personally steal" anything, but it is within an attorney's duties to supervise the execution of a writ. Thus, the statement in <u>Chu</u> referred to actions taken by an attorney on behalf of the client but which did not properly constitute the legal duties of an attorney. Second, neither <u>Chu</u> nor the cases it cited

-22-

actually presented examples of an attorney being held liable for conversion for actions taken on a client's behalf.

In <u>Chu</u> the court reversed a jury finding that an attorney had committed conspiracy to defraud and conversion.  <u>See</u> <u>Chu</u>, 249 S.W.3d at 446-47 ("We are especially reticent to open the door to such claims here against an opposing party's attorney.").  The cases cited by <u>Chu</u> in support of its statement all dealt with conspiracies to defraud rather than conversion.  <u>See</u> <u>id.</u> at 446 n.19 (citing <u>Estate of Stonecipher v. Estate of Butts</u>, 686 S.W.2d 101, 103 (Tex. 1985) (affirming a judgment against an attorney for conspiracy to defraud where an attorney, in an effort to assist a client in evading a judgment, had received title to the client's property before the judgment and then transferred title back to the client after the judgment creditor had ceased trying to collect); <u>Poole v. Houston & T.C. Ry. Co.</u>, 58 Tex. 134, 137-38 (1882) (qualified immunity does not protect an attorney who fraudulently assumed apparent ownership of his client's goods in order to evade seizure of the goods by a judgment creditor); <u>McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests</u>, 991 S.W.2d 787, 794 (Tex. 1999) (noting that fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable)).  In summary, while <u>Chu</u> suggests that a third-party might be able to bring a claim for conversion against an attorney for illegal actions taken on a client's behalf, neither

<u>Chu</u> nor the cases it cites affirms such a claim, and in any event the facts of this action do not match the type of situation described in <u>Chu</u>.  The court concludes, therefore, that application of the Texas qualified immunity doctrine in this action is consistent with the holdings of the Texas Supreme Court.

Since RSL's Complaint does not state a claim against Greenberg Traurig upon which relief can be granted, the court must consider whether the complaint against Greenberg Traurig should be dismissed or whether RSL should be given leave to amend the pleadings.  The Fifth Circuit has stated that when a plaintiff's complaint fails to state a claim, the plaintiff should generally be given a chance to amend the complaint under Federal Rule of Civil Procedure 15(a) before the action is dismissed with prejudice.  <u>See</u> <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  A plaintiff should be denied leave to amend a complaint only if the court determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation

omitted).   Therefore, the court will only deny RSL leave to amend if there is no possibility that RSL could plead facts consistent with its Complaint that could support claims outside of the protection of the Texas qualified immunity doctrine.

**E.    Could an Exception to Qualified Immunity Apply?**

As discussed above, there are exceptions to the qualified immunity doctrine.  First, qualified immunity does not necessarily protect an attorney for torts that are only "tangentially related to his professional role."  <u>Dixon</u>, 2007 WL 4099512, at *7.  For example, if Brown had assaulted Feldman during the course of the execution of the writ, Brown would not be protected by qualified immunity if Feldman brought an assault charge against him.  RSL has provided no hint of any torts committed by Greenberg Traurig independent of its role in the execution of the writ.  The court concludes that there is no reasonable probability that this exception applies to the facts of this case.

RSL's Complaint does suggest that another exception to the qualified immunity doctrine could apply.  An attorney is not protected by qualified immunity "if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person."  <u>Likover</u>, 696 S.W.2d at 472.  RSL's Complaint does not assert claims of either fraud or conspiracy to defraud against Greenberg Traurig,

but it does state in its Factual Allegations that "[i]n taking these wrongful actions, Peachtree and Greenberg Traurig conspired to bring about this improper and wrongful result."[30]

The problem for RSL, however, is that the facts stated in the Complaint do not support a claim of fraud or conspiracy to defraud. The elements of civil conspiracy in Texas are:  (1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 675 (Tex. 1998).  The elements of fraud are:  (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990). Thus, to assert a claim of fraud against Greenberg Traurig RSL would have to allege that Greenberg Traurig knowingly made a false representation to RSL with the intent that RSL act on the representation, and that RSL in fact acted in reliance on the

---

[30]Original Complaint and Application for Injunctive Relief, Docket Entry No. 1, ¶ 9.

representation.   RSL's Complaint alleges neither that Greenberg Traurig made a false representation with the intent that RSL act on it, nor that RSL acted in reliance on any representation by Greenberg Traurig.   Indeed, given the hostile nature of the interactions described in RSL's Complaint, it is quite clear that RSL did not rely on any representations made by Greenberg Traurig. To the extent that Greenberg Traurig represented that the property in Suite 1875 belonged to Rapid Settlements, a central theme of RSL's Complaint is that RSL vigorously and repeatedly denied any such representation.   The court concludes that RSL could not restate its claims consistent with its Original Complaint to allege the element of reliance necessary to prove fraud.  Since RSL cannot plausibly allege the unlawful act of fraud, it likewise cannot plausibly allege that Greenberg Traurig conspired to defraud. Thus, the fraud exception to the qualified immunity doctrine does not apply in this action.

RSL's statement that "Peachtree and Greenberg Traurig conspired to bring about this improper and wrongful result" is more logically interpreted as alleging that the two parties conspired to commit wrongful execution, conversion, theft, and trespass.   The question then is whether there is an exception to the Texas qualified immunity doctrine for such conspiracies.   The parties have not provided the court with any decisions to this effect by Texas courts, and the court has not been able to locate any.   The court concludes that claims of conspiracies are evaluated under the

same general rule as are the underlying claims:  so long as the attorney is engaged in the conduct at issue as part of the discharge of his duties in representing his client, that conduct is not independently actionable, even if frivolous or without merit. Alpert, 178 S.W.3d at 406.  The "exceptions" discussed above involve situations in which courts found that qualified immunity did not apply because the lawyers' actions in conspiring to defraud a third party did not constitute the performance of legitimate legal duties.  Unlike conspiring to defraud, the execution of a writ constitutes the legitimate performance of a lawyer's duties. If the attorney's execution of the writ is in error, the aggrieved party has a cause of action against the judgment creditor for wrongful execution, but not against the attorney.  Since the execution of writs frequently involves disputed transfers of property, and since clients frequently work with attorneys to execute writs, it can be expected that if there were an exception to qualified immunity for conspiracies to commit wrongful execution, plaintiffs could -- and almost certainly would -- bring such claims against the attorneys in virtually every case in which wrongful execution was pled.  Since RSL has not shown that any Texas court has declared that such an exception exists, the court must conclude that no such exception exists.  Thus, even if RSL were to replead its Complaint to properly allege conspiracy to commit wrongful execution, it could not replead its claims in a way

consistent with the facts in the Original Complaint that would bring the claims against Greenberg Traurig outside of the protection of the qualified immunity doctrine.   The court concludes, therefore, that RSL has failed to state a claim against Greenberg Traurig upon which relief can be granted, and that RSL cannot amend its pleadings to state a plausible claim consistent with the facts alleged in the Original Complaint.   Therefore, the court will dismiss all claims against Greenberg Traurig pursuant to Rule 12(b)(6).

### III.   <u>Peachtree's Motion to Dismiss</u>

Peachtree has moved to dismiss on two grounds.   First, Peachtree seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the court cannot grant the relief that RSL seeks because to do so would violate the Anti-Injunction Act. Second, Peachtree argues that the court should dismiss the action under Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party   -- Rapid Settlements.   Peachtree also argues that the court should abstain from hearing this action under the <u>Colorado River</u> doctrine on the grounds that this action would interfere with parallel state court proceedings.

**A.   Peachtree's Rule 12(b)(6) Motion**

Rule 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The standard for reviewing motions to dismiss under Rule 12(b)(6) is described above in part II, A, 1.

Peachtree argues that RSL has failed to state a claim upon which relief can be granted because the relief it seeks would require an injunction of state court proceedings that would violate the Anti-Injunction Act.  The Anti-Injunction Act provides:  "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The Anti-Injunction Act generally prohibits federal courts from interfering with proceedings in state court."  Health Net, Inc. v. Wooley, 534 F.3d 487, 493 (5th Cir. 2008) (quoting Vines v. Univ. of La., 398 F.3d 700, 704 (5th Cir. 2005)).  The statute is strictly construed, and only the three exceptions contained in the text are recognized.  Id. (citing Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs, 90 S. Ct. 1739, 1743 (1970)).

While the Anti-Injunction Act may be relevant to whether this court can grant the injunctive relief that RSL seeks, the Anti-Injunction Act has no relevance to whether this court can grant the money damages that RSL seeks.  RSL has demanded damages in its

claims for Wrongful Execution and Conversion.[31]   Peachtree has provided the court with no reason to conclude that the court cannot grant the damages that RSL demands, nor has Peachtree argued that RSL has failed to plead facts establishing the elements of wrongful execution and conversion.  The court concludes that RSL has alleged "enough facts to state a claim to relief that is plausible on its face."  See Twombly, 127 S. Ct. at 1974.  Accordingly, Peachtree's motion to dismiss under Rule 12(b)(6) will be denied.


**B.   Peachtree's Rule 12(b)(7) Motion**

Peachtree argues that this action should be dismissed under Federal Rule of Civil Procedure 12(b)(7) because RSL failed to join Rapid Settlements, which Peachtree argues is an indispensible party under Rule 19.  Under Rule 12(b)(7) a court may dismiss an action for "failure to join a party under Rule 19."  FED. R. CIV. P. 12(b)(7).  Rule 19(a) provides:

> (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[31]Original Complaint and Application for Injunctive Relief, Docket Entry No. 1, ¶¶ 23, 25.

-31-

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. FED. R. CIV. P. 19(a).

Determining whether an entity is an indispensable party under Rule 19 is a highly-practical, fact-based endeavor. Hood ex rel. Mississippi v. City of Memphis, Tenn., 570 F.3d 625, 628 (5th Cir. 2009). While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." Hood ex rel. Mississippi v. City of Memphis, Tenn., 570 F.3d 625, 628 (5th Cir. 2009) (quoting Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1309 (5th Cir. 2006)). "In circumstances where the litigation should not proceed without absent persons, the federal suit should be dismissed." Pulitzer-Polster, 784 F.2d at 1308-09.

Peachtree argues that "Rapid is the underlying judgment debtor, and as such, it is an indispensable party."[32]   The court does not agree.  This action involves the claims of FinServ, RSL, and The Feldman Law Firm regarding what they allege to be the wrongful seizure of property from RSL's offices.   If the

---

[32]Defendant Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion to Dismiss and, in the Alternative, Motion to Abstain, Docket Entry No. 6, p. 10.

plaintiffs' claims are meritorious, they can obtain complete relief in this action without the presence of Rapid Settlements.  If the plaintiffs' claims lack merit the defendants can prevail without Rapid Settlements being joined as a party.  The court concludes that it can accord complete relief among existing parties without the joinder of Rapid Settlements.  See FED. R. CIV. P. 19(a)(1)(A).

There is a somewhat stronger argument that Rule 19(a)(1)(B)(ii) may apply, although the court concludes that it does not.  First, it is doubtful whether Rapid Settlements is a "person [who] claims an interest relating to the subject of the action," because the management of Rapid Settlements asserts that the entity has no assets, and thus it may not be proper to say that Rapid Settlements "claims an interest" in anything.  Second, assuming that Rapid Settlements were such a person, the court does not conclude that "disposing of the action in the person's absence may . . . leave an existing party subject to . . . inconsistent obligations because of the interest."  While it is possible that the outcomes of this action and the underlying litigation in state court could result in inconsistent obligations for either Peachtree or RSL -- for example, if this court were to hold that Peachtree converted RSL's property while the state court found that the property actually belonged to Rapid Settlements -- that possibility exists regardless of whether Rapid Settlements is a party to this action or not.  Because the risk of an inconsistent outcome exists

-33-

whether or not the action is disposed of "in the person's absence," the court concludes that Rule 19(a)(1)(B)(ii) does not apply, and therefore that Rapid Settlements is not an indispensable party under Rule 19.   Accordingly, the court will deny Peachtree's Rule 12(b)(7) motion.

## C.   Peachtree's Motion to Abstain

Peachtree argues that the court should abstain in favor of the pending state court proceedings under the principles outlined in Colorado River Water Conservation District v. United States, 96 S. Ct. 1236, 1246 (1976).

### 1.   Colorado River Abstention

In Colorado River the Supreme Court held that federal courts may abstain from exercising their jurisdiction over a case where "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," so warrant.   Id.   A District Court's obligation to hear a dispute, however, "does not evaporate simply because there is a pending state court action involving the same subject matter." Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., 48 F.3d 294, 297 (8th Cir. 1995).   The Supreme Court in Colorado River stated:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.   "The doctrine of abstention, under which a District Court may decline to

-34-

> exercise or postpone the exercise of its jurisdiction, is
> an extraordinary and narrow exception to the duty of a
> District Court to adjudicate a controversy properly
> before it.  Abdication of the obligation to decide cases
> can be justified under this doctrine only in the
> exceptional circumstances where the order to the parties
> to repair to the state court would clearly serve an
> important countervailing interest."  <u>Colorado River</u>,
> 96 S. Ct. at 1244, quoting <u>County of Allegheny v. Frank
> Mashuda Co.</u>, 79 S. Ct. 1060, 1063 (1959).

Rather than prescribing a "hard and fast rule" governing when the doctrine applies, the Court has identified six factors that a district court may consider when making this determination:  (1) whether the state or federal court has assumed jurisdiction over the res; (2) the relative inconvenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.  <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 103 S. Ct. 927, 936-37, 941-42 (1983); <u>see also Murphy v. Uncle Ben's, Inc.</u>, 168 F.3d 734, 738 (5th Cir. 1999). None of these factors are determinative; rather, they require "a careful balancing of the important factors as they apply in a given case, with the balance most heavily weighted in favor of the exercise of jurisdiction."  <u>Moses H. Cone</u>, 103 S. Ct. at 937.

<u>Colorado River</u> abstention applies only if there are parallel state and federal court proceedings.  <u>Brown v. Pac. Life Ins. Co.</u>,

462 F.3d 384, 395 n.7 (5th Cir. 2006) (citing RepublicBank Dallas, Nat. Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987)). Suits are "parallel" if they "involv[e] the same parties and the same issues." Id. Courts frequently define "parallelism" for purposes of Colorado River abstention in terms of "substantially the same parties" litigating "substantially the same issues." See, e.g., Tyrer v. City of S. Beloit, Ill., 456 F.3d 744, 752 (7th Cir. 2006); Al- Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 232 (4th Cir. 2000); Allen v. Bd. of Educ., Unified Sch. Dist. 436, 68 F.3d 401, 402 (10th Cir. 1995). The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005); accord Rowley v. Wilson, 2006 WL 2233221, at *1 (5th Cir. 2006) (holding that suits were not parallel for Colorado River abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit).

    2.  Analysis

    The court concludes that Colorado River abstention is not appropriate in this action. First, the federal and state court actions are not parallel because they do not involve "substantially the same parties" litigating "substantially the same issues." Of

-36-

the three plaintiffs and two defendants named in this action, only Peachtree is named as a party in the state court action, and the defendant in the state court action, Rapid Settlements, is not a named party in this action.   Peachtree has alleged that Rapid Settlements is closely related to the three plaintiffs in this action, but that allegation is not sufficient to establish that the parties are "substantially the same."   Peachtree's own exhibit shows that Rapid Settlements, RSL, and The Feldman Law Firm are registered as separate legal entities with the Texas Secretary of State.[33]   Indeed, each is registered as a different type of entity, since Rapid Settlements is a Limited Partnership, RSL is a Limited Liability Corporation, The Feldman Law Firm is a Limited Liability Partnership, and FinServ is an Anguillan Corporation.[34]   The issues in the two actions are also different.   This action concerns the plaintiffs' causes of action resulting from what they claim was a wrongful execution on their property, while the state court action at this point concerns Peachtree's attempts to collect on its judgment against Rapid Settlements.   While the two actions concern similar facts, the causes of action in the two actions are different, and the resolution of one will not necessarily dispose of all claims in the other.   The court concludes that the two

_____

[33]Filing Documents from the Texas Secretary of State's Office, Exhibit K to Peachtree's Motion to Dismiss, Docket Entry No. 6.

[34]Id.; Original Complaint and Application for Injunctive Relief ("Complaint"), Docket Entry No. 1, ¶ 1.

actions are not parallel, and thus abstention is not appropriate. See Brown, 462 F.3d at 395 n.7.

Even if the actions were parallel, the court would still decline to abstain because Peachtree has not established that the facts merit an "extraordinary and narrow exception" from the court's duty to hear the action.  Of the six factors delineated in Moses H. Cone, the only factors that the court finds to be somewhat in favor of abstention are (3) the risk of piecemeal litigation, (4) the priority of the state-court action, and (5) the fact that state law rather than federal law governs the parties' claims.  Of these factors, factor (5) has little weight because this court is capable of applying Texas law and does so frequently, and thus the rights of the parties will not be compromised by having their dispute addressed in federal court.  Factor (4) is more significant.  Although this action and the state action involve different named parties and different claims, the same fact questions are central in both actions -- to whom did the seized property belong, and did Peachtree have good cause to conclude that it belonged to Rapid Settlements?  Although the state court has not been concerned with these particular questions until approximately the same time that this court became concerned with them, it has presided over the dispute between Peachtree and Rapid Settlements for some years now, and is familiar with the parties to this action.  The court concludes that the state court's priority in addressing the overall dispute is relevant.  The other significant

-38-

factor is (3), the risk of piecemeal litigation.  As discussed above, it is possible that the outcomes of this action and of the state court action could result in inconsistent obligations for either Peachtree or RSL.

While factors (3) and (4) generally support abstention, the court does not conclude that they represent "exceptional circumstances" such that abstention is warranted.  The preferable way to mitigate the risk of inconsistent outcomes and to respect the priority of the state court action is for this court to stay this action pending the resolution of the state court action.  So that the court may stay informed of developments in the state court, the parties will be ordered to present a joint status report to the court by September 3, 2010, and every sixty days thereafter. If a status report indicates that the stay is no longer appropriate the court will lift the stay.

### IV.  The Defendants' Motions to Quash

The defendants have filed similar motions to quash, motions for protective order, and motions to stay discovery (Docket Entry Nos. 14 and 17).  Because the court is granting Greenberg Traurig's motion to dismiss, its Motion to Quash, Motion for Protective Order, and Motion to Stay Discovery (Docket Entry No. 17) is now moot.  Because the court is staying this action pending resolution

of the state court action, Peachtree's motions regarding discovery
(Docket Entry No. 14) are also moot.

The court will address one issue that will become relevant if
the stay is lifted.  Peachtree has requested a protective order
quashing certain requests for depositions and production that
Peachtree asserts would result in the disclosure of information
protected by the attorney-client privilege.  RSL has requested
multiple documents involving communications between Peachtree and
Greenberg Traurig, and it appears that some of these requests may
involve information protected by the attorney-client privilege.  At
such time as the stay is lifted, the court will require Peachtree
to produce a privilege log of all documents potentially responsive
to plaintiffs' discovery requests, and will allow plaintiffs to
respond by explaining what potential exceptions to the claims of
privilege would justify discovery.

## V.  Conclusion and Order

For the reasons explained above, the court concludes that
Greenberg Traurig is protected by the Texas qualified immunity
doctrine from all of the claims the plaintiffs have asserted
against it.  Accordingly, Greenberg Traurig, LLP's Motion to
Dismiss (Docket Entry No. 7) is **GRANTED** and all of RSL's claims
against Greenberg Traurig, LLP are **DISMISSED**.  Defendant Greenberg

Traurig, LLP's Motion to Quash, Motion for Protective Order, and Motion to Stay Discovery (Docket Entry No. 17) is **DENIED** as moot.

Because plaintiffs have stated a claim against Peachtree upon which relief can be granted and because plaintiffs have not failed to join an indispensable party, Defendant Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion to Dismiss and, in the Alternative, Motion to Abstain (Docket Entry No. 6), is **DENIED**. Because the court is staying this action, Defendant Settlement Funding, LLC D/B/A Peachtree Settlement Funding's Motion to Quash, Motion for Protective Order, and Motion to Stay Discovery (Docket Entry No. 14), is **DENIED** as moot.

Recognizing that there is a prior-filed action in state court which is addressing issues similar to those addressed in this action, the court concludes that it is appropriate to **STAY this action** until the state court action is resolved or the court determines that a lift of the stay is otherwise appropriate.  The parties are **ORDERED** to present a joint status report describing the status of the state court action to the court by September 3, 2010, and every sixty days thereafter.

**SIGNED** at Houston, Texas, on this 13th day of July, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-41-