United States District Court
Southern District of Texas
**ENTERED**
February 29, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FINSERV CASUALTY CORP., on §
behalf of itself and as agent §
for A.M.Y. PROPERTY & CASUALTY §
INSURANCE CORPORATION; §
RSL FUNDING LLC; §
THE FELDMAN LAW FIRM, LLP, §
§
Plaintiffs, §
§
v. § Civil Action No. H-10-264
§
SETTLEMENT FUNDING, LLC, §
§
Defendant. §

## MEMORANDUM AND RECOMMENDATION

In this memorandum, the court[1] addresses: (1) the Feldman Parties'[2] Traditional Motion for Partial Summary Judgment on Settlement Funding's Claims for Piercing the Corporate Veil/Alter Ego, Sham to Perpetrate a Fraud, and Partnership Liability ("Traditional Motion") (Doc. 152); and (2) the Feldman Parties' No Evidence Motion for Partial Summary Judgment on Settlement Funding's Claims for Piercing the Corporate Veil/Alter Ego, Sham to Perpetrate a Fraud, and Partnership Liability ("No Evidence

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 44.

[2] The "Feldman Parties" are Rapid Settlements, Ltd., ("Rapid"), Rapid Management Corp. ("Rapid Management"), RSL Funding, LLC, ("RSL"), Stewart A. Feldman ("Feldman"), FinServ Casualty Corp. ("FinServ"), A.M.Y. Property & Casualty Insurance Corporation ("AMY"), and The Feldman Law Firm, LLP, ("The Feldman Law Firm").

Motion")(Doc. 162).[3]

The court has considered the motions, the response, the replies, the objections to evidence, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that the Feldman Parties' Traditional Motion and No Evidence Motion each be **GRANTED IN PART AND DENIED IN PART.**

## I.   Case Background

This dispute arises from the seizure of property pursuant to a writ of execution acquired by Settlement Funding, LLC, ("Settlement Funding") as judgment creditor of Rapid Settlements, Ltd. ("Rapid").   Settlement Funding and Rapid competed in the secondary market of acquiring rights to structured-settlement annuities.  State litigation between the two arose out of disputes over business practices and led to judgments in favor of Settlement Funding.

## A.   Factual Background[4]

Feldman is the owner and managing partner of The Feldman Law Firm, LLP, ("The Feldman Law Firm"), a Texas limited liability

---

[3]     Also pending are Settlement Funding's Motion to Exclude Expert Witnesses (Doc. 240), Settlement Funding's Motion in Limine (Doc. 241), which the court will address separately.  The court order on Settlement Funding's Motion for Protective Order (Doc. 261) and the FinServ Parties' Motion to Compel Discovery (Doc. 262) are addressed in a separate order filed contemporaneously with this memorandum.

[4]     Many of the cited documents in evidence can be found in the record multiple times.  For the court's convenience, only one cite is provided each time a particular document is referenced.  The court has attempted to provide the same cite for each reference to a particular document but cannot guarantee complete success.  The choice of which motion or response's exhibits are cited is arbitrary.

partnership formed in 1994.[5]  On November 30, 1995, Substram, Inc., was formed as a Texas corporation and, in August 2003, changed its name to RSL Funding Corp.[6]  On December 31, 2008, RSL Funding Corp. changed its name to RSL Funding, LLC, ("RSL").[7]  Feldman is a member, manager, and chief executive officer of RSL.[8]

AMY was formed in 1999 in the British Virgin Islands as a property and casualty insurance company and is domiciled in the British Overseas Territory of Anguilla, British West Indies.[9]  It is regulated by the insurance department of the Anguilla Financial Services Commission.[10]  As an insurance company, AMY has collected millions of dollars in premiums "relating to hundreds, if not thousands, of insurance policies" and has processed thousands of

---

[5]      Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 7; see also Doc. 153-5, Ex. L to the Feldman Parties' Traditional Mot., Feldman/Matz Ints., L.L.P. Restated Ltd. P'ship Agreement p. 1.

[6]      Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 6.

[7]      Id.; see also Doc. 153-3, Ex. J to the Feldman Parties' Traditional Mot., RSL's Certificate of Filing; Doc. 153-4, Ex. K to the Feldman Parties' Traditional Mot., RSL's Ltd. Liability Co. Agreement; Doc. 160-1, Sealed Ex. HH-1 to the Feldman Parties' Traditional Mot., RSL's Certificate of Formation.

[8]      Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 6; Doc. 153-4, Ex. K to the Feldman Parties' Traditional Mot., RSL's Ltd. Liability Co. Agreement.

[9]      Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 4; see also Doc. 152-4, Ex. A to the Feldman Parties' Traditional Mot., AMY's Mem. & Arts. of Ass'n; Doc. 152-5, Ex. B to the Feldman Parties' Traditional Mot., AMY's Ins. License.

[10]      Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 4.

claims on its policies.[11]  In addition to underwriting insurance policies and processing claims, AMY invested its assets through loan agreements, including loan transactions with Rapid after its formation.[12]

Rapid was formed as a Texas limited partnership on March 6, 2003.[13] Feldman was a limited partner from its inception and served as an officer.[14]  Rapid Management Corp. ("Rapid Management"), a Texas corporation formed on March 6, 2003, was Rapid's sole general partner.[15]  Feldman served as president of Rapid Management.[16] Feldman testified that Rapid and Rapid Management always "maintained distinct and separate corporate records, financial statements, tax returns, accounts" from all other entities.[17]

In early 2006, Settlement Funding first brought suit against

---

[11]    Id.

[12]    Id.

[13]    Id. ¶ 2; see also Doc. 152-8, Ex. E to the Feldman Parties' Traditional Mot., Rapid's Certificate of Ltd. P'ship; Doc. 152-9, Ex. F to the Feldman Parties' Traditional Mot., Rapid's Ltd. P'ship Agreement.

[14]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 2; see also Doc. 152-9, Ex. F to the Feldman Parties' Traditional Mot., Rapid's Ltd. P'ship Agreement pp. 30-32.

[15]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶¶ 2, 3; see also Doc. 152-9, Ex. F to the Feldman Parties' Traditional Mot., Rapid's Ltd. P'ship Agreement pp. 30-32; Doc. 153-1, Ex. H to the Feldman Parties' Traditional Mot., Letter to Feldman from Office of the Sec'y of St. of Tex. Dated Mar. 6, 2003.

[16]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶¶ 2, 3; see also Doc. 154-5, Ex. S to the Feldman Parties' Traditional Mot., Agreement Dated Dec. 13, 2008 (signing as president of Rapid Management).

[17]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶¶ 2, 3.

Rapid challenging an arbitration demand served on Settlement Funding by Rapid regarding a claim of tortious interference related to an annuitant, Simmie Bernard King ("King").[18]  Later in 2006, Settlement Funding brought a similar case against Rapid related to arbitration proceedings against annuitant Evelyn E. Franklin ("Franklin") and, in early 2007, intervened in a suit Rapid filed for confirmation of an arbitration award against annuitant William Maxwell ("Maxwell").[19]

In 2006, FinServ was formed in the British Virgin Islands.[20] Like AMY, it is domiciled in British Overseas Territory of Anguilla, British West Indies, and regulated by the insurance department of the Anguilla Financial Services Commission.[21] As an insurance company, FinServ has collected millions of dollars in premiums "relating to hundreds, if not thousands, of insurance policies" and has processed thousands of claims on its policies.[22]

---

[18]     See Doc. 166-2, Ex. 1 to Settlement Funding's Resp. to the Feldman Parties' Traditional & No Evid. Mots. for Partial Summ. J. on Pls.' Cls. for Piercing the Corp. Veil/Alter Ego, Sham to Perpetrate a Fraud, & P'ship Liability ("Settlement Funding's Resp."), Mot. to Stay Arb. Proceedings & Appl. for TRO & Temporary & Permanent Inj. & Original Pet.

[19]     See Doc. 166-3, Ex. 2 to Settlement Funding's Resp., Settlement Funding's Original Pet. for Decl. J. & Appl. for TRO & Temporary & Permanent Inj.; Doc. 166-4, Ex. 3 to Settlement Funding's Resp., Plea in Intervention.

[20]     Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 5; see also Doc. 152-6, Ex. C to the Feldman Parties' Traditional Mot., FinServ's Certificate of Incorporation; Doc. 152-7, Ex. D to the Feldman Parties' Traditional Mot., FinServ's Ins. License.

[21]     Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 5.

[22]     Id.

In addition to underwriting insurance policies and processing claims, FinServ invested its assets through loan agreements, including loan transactions with Rapid.[23]

On May 5, 2008, the three state-court lawsuits involving King, Franklin, and Maxwell were consolidated.[24] In last quarter of 2008, Settlement Funding obtained two judgments against Rapid, one in the Franklin case and one in an interpleader action involving annuitant Lucille Harrod ("Harrod").[25]

"In late 2008, . . . Rapid was struggling financially, and having no other practical financial options, announced its intention to its landlord to, and in fact did, abandon its real property lease, ceasing operations, defaulting on its lease, and tendering the premises back to the landlord."[26] On December 13, 2008, The Feldman Law Firm, AMY, FinServ, and Rapid entered into an agreement accepting Rapid's property and assets, which included cash, documents, customer lists, and data, in partial satisfaction (in the amount of $50,000) of Rapid's outstanding debt.[27] Rapid

---

[23]     Id.

[24]     See Settlement Funding LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 2, Am. Notice of Removal pp. 2-3.

[25]     See Doc. 166-5, Ex. 4 to Settlement Funding's Resp., Final J. in Harrod Action; Doc. 166-6, Ex. 5 to Settlement Funding's Resp., Order in Franklin Action.

[26]     Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 13; see also Doc. 166-15, Ex. 14 to Settlement Funding's Resp., Aff. of Feldman as Corp. Rep. of The Feldman Law Firm p. 110.

[27]     See Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 15; Doc. 154-5, Ex. S to the Feldman Parties' Traditional Mot., Agreement Dated Dec. 13, 2008; Doc. 166-13, Ex. 12 to

also transferred $165,344.43 to AMY, $78,246.41 to FinServ, and $318,413.14 to The Feldman Law Firm.[28]  On December 18, 2008, Rapid transferred an additional $800 in cash to The Feldman Law Firm.[29]  On February 28, 2009, The Feldman Law Firm credited Rapid $50,000 and $945,000 against amounts Rapid owed to The Feldman Law Firm.[30]

This division of property and assets among AMY, FinServ and The Feldman Law Firm was decided by those entities when they enforced their loans and other agreements against Rapid.[31]  Feldman and/or his wife directly or indirectly owned all three lienors, as well as Rapid and RSL.[32]  By early 2009 at the latest, Rapid owned

---

Settlement Funding's Resp., The Feldman Law Firm's Resps. to Settlement Funding's 1st Set of Reqs. for Admis. No. 19; Doc. 166-14, Ex. 13 to Settlement Funding's Resp., Rapid's Am. Objs. & Resps. to Pls.' 1st Set of Interrogs. No. 10.

[28]     Doc. 166-16, Ex. 15 to Settlement Funding's Resp., AMY's Resps. to Settlement Funding's 1st Set of Reqs. for Admis. No. 20; Doc. 166-17, Ex. 16 to Settlement Funding's Resp., FinServ's Resps. to Settlement Funding's 1st Set of Reqs. for Admis. No. 20; Doc. 166-13, Ex. 12 to Settlement Funding's Resp., The Feldman Law Firm's Resps. to Settlement Funding's 1st Set of Reqs. for Admis. Nos. 16, 17.

[29]     Doc. 166-13, Ex. 12 to Settlement Funding's Resp., The Feldman Law Firm's Resps. to Settlement Funding's 1st Set of Reqs. for Admis. No. 18.

[30]     Id. Nos. 19-20.

[31]     See Doc. 166-18, Ex. 17 to Settlement Funding's Resp., Dep. of Feldman as Corp. Rep. of Rapid p. 53; Doc. 166-19, Ex. 18 to Settlement Funding's Resp., Dep. of Feldman as Corp. Rep. of AMY pp. 36-37.

[32]     See Doc. 166-14, Ex. 13 to Settlement Funding's Resp., Rapid's Am. Objs. & Resps. to Pl.'s 1st Set of Interrogs. No. 4; Doc. 166-28, Ex. 27 to Settlement Funding's Resp., RSL's Supplemental Resps. to Settlement Funding's 2nd Set of Interrogs. No. 9; Doc. 166-30, Ex. 29 to Settlement Funding's Resp., AMY's Supplemental Objs. & Answers to Settlement Funding's 1st Set of Interrogs. No. 1; Doc. 166-35, Ex. 34 to Settlement Funding's Resp., Feldman's Supplemental Answers to Settlement Funding's 1st Set of Interrogs. No. 1; Doc. 166-37, Ex. 36 to Settlement Funding's Resp., FinServ's Supplemental Objs. & Answers to Settlement Funding's 1st Set of Interrogs. No. 1; Doc. 116-38, Ex. 37 to Settlement Funding's Resp., Rapid Mgmt.'s Supplemental Resps. to Settlement Funding's 1st Set of Reqs. for Admis Nos. 2, 6.

no tangible or intangible assets and had ceased conducting any business.[33]

About that time, Feldman informed Rapid's operations manager, Tuan Tran ("Tran") that Rapid was winding down and RSL was starting.[34] Tran began working for RSL, continuing in the same position with the same duties.[35] None of Rapid's employees changed offices.[36] The RSL sales representatives continued to use Rapid's customer database.[37] Even so, as of March 24, 2015, Rapid remained in existence and in good standing with the State of Texas as a limited partnership, and Rapid Management remained in existence and in good standing with the State of Texas as a corporation.[38]

On November 18, 2009, the state court issued a judgment in the Maxwell action in favor of Settlement Funding against Rapid for the amount of $171,863.91.[39] On January 4, 2010, the Harris County District Clerk issued a writ of execution to Settlement Funding on

---

[33]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 13.

[34]    See Doc. 166-21, Ex. 20 to Settlement Funding's Resp., Dep. of Tran p. 21.

[35]    See id.

[36]    See id. p. 31-33.

[37]    Id. p. 120.

[38]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶¶ 2, 3.

[39]    See Doc. 166-7, Ex. 6 to Settlement Funding's Resp., Final J. in the Maxwell Action Dated Nov. 18, 2009.

the November 2009 state court judgment for the full amount.[40]   The writ of execution was directed at Rapid's property and had "5051 Westheimer Suite #1850 or 1875" written by hand across the top.[41]

On January 19, 2010, Harris County constables served the writ of execution at 5051 Westheimer in Houston, based on information from the Texas Secretary of State identifying Rapid's address.[42] Settlement Funding's attorney, Paul Brown ("Brown") accompanied three constables.[43]   Escorted by a self-identified Rapid employee, Brown and the constables entered Suite 1875, which bore Rapid's name on the doorplate.[44]

The constables took a complete inventory of the premises, videotaping the offices, their contents, and the common areas.[45] They observed checks, operations manuals, and other documents that were labeled with Rapid's name, and they spoke with others who identified themselves as Rapid employees.[46]   The constables seized

---

[40]   See Doc. 166-82, Ex. 81 to Settlement Funding's Resp., Writ of Execution.

[41]   Id.

[42]   See Doc. 166-83, Ex. 82 to Settlement Funding's Resp., Bus. Org. Inquiry Dated Jan. 7, 2010; Doc. 166-86, Ex. 85 to Settlement Funding's Resp., Aff. of Paul Brown ("Brown") Aff. ¶ 3.

[43]   Doc. 166-86, Ex. 85 to Settlement Funding's Resp., Aff. of Brown ¶ 3.

[44]   Id. ¶¶ 4-5; see also Doc. 166-85, Ex. 84 to Settlement Funding's Resp., Photograph of Doorplate.

[45]   Doc. 166-86, Ex. 85 to Settlement Funding's Resp., Aff. of Brown ¶ 5; see also Doc. 166-88, Ex. 87 to Settlement Funding's Mot., Video.

[46]   Doc. 166-86, Ex. 85 to Settlement Funding's Resp., Aff. of Brown ¶ 5; see also Doc. 166-88, Ex. 87 to Settlement Funding's Mot., Video.

furniture, computers, electronic data base and files, and other tangible assets.[47]

On March 3, 2010, Rapid changed its name to Liquidating Marketing, Ltd., ("Liquidating Marketing") "to reflect the change in the nature of its business."[48] On the same day, Rapid Management changed its name to Liquidating Marketing Management Corp. ("Liquidating Marketing Management") "to reflect the change in the character of its business."[49]

In October 2010, Settlement Funding obtained a judgment against Rapid in the King action.[50] The 2009 Maxwell and the 2010 King judgments were partially remanded on appeal for segregation of fees, and, on remand, both judgments were increased.[51]

As of March 2015, according to Feldman, Rapid owed: (1) AMY more than $500,000 under a loan agreement; (2) FinServ more than $1.8 million pursuant to its participation in AMY's loan agreement with Rapid; and (3) The Feldman Law Firm more than $1 million under

---

[47]    See Doc. 166-60, Ex. 59 to Settlement Funding's Resp., Aff. of Harold Levine Dated Jan. 19, 2010.

[48]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 2; see also Doc. 153, Ex. G to the Feldman Parties' Traditional Mot., Liquidated Marketing's Certificate of Filing.

[49]    Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 3; see also Doc. 153-2, Ex. I to the Feldman Parties' Traditional Mot., Liquidated Marketing Mgmt.'s Certificate of Filing.

[50]    See Doc. 166-8, Ex. 7 to Settlement Funding's Resp., Am. Order Granting Mot. for Summ. J., Denying Mot. for Continuance &/or Mot. to Strike, & Final J.

[51]    See Doc. 166-9, Ex. 8 to Settlement Funding's Resp., Final J. in Maxwell Action Dated Nov. 19, 2013; Doc. 166-10, Ex. 9 to Settlement Funding's Resp., Final J. in King Action Dated Mar. 3, 2014.

a line-of-credit loan, a total of less than four million dollars.[52]

**B.   Procedural Background**

On January 28, 2010, the Feldman Parties filed suit against Settlement Funding for wrongful execution, trespass, theft of property, and conversion.[53]  The court stayed the case on July 13, 2010, pending the resolution of the state litigation.[54]

On August 29, 2014, the court lifted the stay and consolidated Settlement Funding's claims of alter ego, fraudulent transfer,[55] and partnership liability from Settlement Funding LLC v. RSL Funding, LLC, Civil Action Number H-12-2044, ("H-12-2044") into this action.[56]  Settlement Funding, Peachtree Settlement Funding, LLC, ("Peachtree"), and Franklin's claims of tortious interference against Rapid, Rapid Management, RSL, and Feldman remained pending in H-12-2044.[57]

---

[52]   Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶¶ 22-24.

[53]   See Doc. 1, the Feldman Parties' Compl.

[54]   See Doc. 27, Mem. Opinion & Order Dated July 13, 2010.

[55]   Motions for summary judgment on the fraudulent-transfer cause of action were addressed in a prior memorandum. See Doc. 252, Mem., Recommendation, & Order Dated Sept. 1, 2015.  The court therefore does not go into detail about the pleading of that cause of action.

[56]   See Doc. 51, Order Dated Aug. 29, 2014; Settlement Funding LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 2, Am. Notice of Removal p. 3.

[57]   See Settlement Funding, LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 213, Order Dated Aug. 29, 2014.

Settlement Funding's[58] live pleading with regard to the consolidated claims was its Second Supplemental Petition filed in H-12-2044 on July 6, 2012.[59] As pled there, Settlement Funding alleged that Rapid and RSL were "operated as shams to perpetrate fraud," that Rapid was the alter ego of RSL and that both were alter egos of Feldman.[60] Settlement Funding asked the court to "ignore the form of both RSL and Rapid" under the theories of alter ego, veil piercing, and/or single business enterprise."[61] In addition to alleging that RSL was responsible for Rapid's misconduct, Settlement Funding sought to hold "RSL's owners, interest holders, and partners, including but not limited to Feldman, responsible for RSL's misconduct."[62] Settlement Funding sought, through its partnership-liability claim, to impose joint and several liability on Rapid Management and Feldman for all of Rapid's obligations.[63]

On September 12, 2014, Settlement Funding filed an answer and

---

[58]  Other plaintiffs in that action joined Settlement Funding in asserting the affirmative claims in H-12-2044. See Settlement Funding LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 2-3, Ex. B to Am. Notice of Removal, 2nd Supplemental Pet. However, Settlement Funding is the only pleader on the affirmative claims as consolidated.

[59]  Settlement Funding, LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 2-3, Ex. B to Am. Notice of Removal, 2nd Supplemental Pet.

[60]  Id. p. 4.

[61]  Id. pp. 4-5.

[62]  Id. p. 5.

[63]  See id.

a counterclaim to RSL, FinServ, AMY, and The Feldman Law Firm's January 2010 complaint.[64]  As a defense to the Feldman Parties' wrongful-execution cause of action, Settlement Funding alleged that RSL, FinServ, AMY, and The Feldman Law Firm were all alter egos of Rapid and Rapid Management.[65]  In its counterclaim, Settlement Funding alleged fraudulent transfer and alter ego as affirmative claims.[66]

The fraudulent transfer claim was based on transfers made to FinServ, AMY, and The Feldman Law Firm pursuant to the agreement that Rapid entered with those three parties on December 13, 2008, and transfers to The Feldman Law Firm on February 28, 2009.[67]  The alter ego claim stated that RSL, FinServ, AMY, and The Feldman Law Firm were alter egos of Rapid and Rapid Management.[68]  In support of an alter-ego finding, Settlement Funding alleged:

> 11.  Among other things, Rapid and Rapid Management were: (1) inadequately capitalized; (2) used as a means of perpetrating fraud; (3) organized and operated as mere tools or business conduits of Plaintiffs or others; and (4) resorted to as a means of evading legal obligations.[69]

The Feldman Parties failed to answer Settlement Funding's

---

[64]  See Doc. 54, Settlement Funding's Answer, Affirmative Defenses, & Countercl.

[65]  See id. p. 6.

[66]  See id. pp. 7-9.

[67]  See id. pp. 7-8.

[68]  See id. p. 9.

[69]  Id. p. 9.

counterclaim timely, prompting Settlement Funding to file a motion for default on November 20, 2014.[70] The Feldman Parties responded by immediately filing an out-of-time motion to dismiss Settlement Funding's Answer and Counterclaim and, about a week later, an untimely answer.[71] The court denied Settlement Funding's motion for default and struck the Feldman Parties' motion to dismiss.[72] The court also denied a Feldman Parties' motion to amend its untimely answer.[73]

On March 24, 2015, the Feldman Parties filed the two motions for partial summary judgment that remain pending.[74] In June, Settlement Funding filed motions to exclude expert testimony and in limine.[75] On September 1, 2015, the court entered a memorandum, recommendation, and order on multiple dispositive motions but left pending the motions on veil piercing/alter ego, sham to perpetrate a fraud, and partnership liability.[76] The memorandum,

---

[70]    See Doc. 96, Settlement Funding's Mot. for Default J.

[71]    See Doc. 97, the Feldman Parties' Mot. to Dismiss Settlement Funding's Answer & Countercl.; Doc. 101, the Feldman Parties' Answer to Settlement Funding's Countercl.

[72]    See Doc. 126, Mem., Recommendation, & Order Dated Jan. 26, 2015; Doc. 239, Order Dated June 8, 2015.

[73]    See Doc. 108, the Feldman Parties' Mot. for Leave to File an Am. Answer; Doc. 126, Mem., Recommendation, & Order Dated Jan. 26, 2015; Doc. 143, Order Dated Feb. 20, 2015.

[74]    See Doc. 152, the Feldman Parties' Traditional Mot.; Doc. 162, the Feldman Parties' No Evid. Mot.

[75]    See Doc. 240, Settlement Funding, LLC's Mot. to Exclude Expert Witnesses; Doc. 241, Settlement Funding, LLC's Mots. in Limine.

[76]    See Doc. 252, Mem., Recommendation, & Order Dated Sept. 1, 2015.

14

recommendation, and order was adopted over objections from both parties.[77]

On November 25, 2015, Settlement Funding, Franklin, and Peachtree, the plaintiffs in H-12-2044, filed an unopposed motion to dismiss the remaining claims in that case.[78]  The court granted the motion, and both parties appealed the case to the Fifth Circuit.[79]

The pending dispositive motions in this case are fully briefed and ready for court consideration.

## II.  Evidentiary Objections

Before addressing the merits of the pending motions, the court first addresses Settlement Funding's evidentiary objections to the Feldman Parties' exhibits to their pending summary judgment motions.

Settlement Funding objects generally to the Feldman Parties' highlighting of portions of the exhibits and specifically to six exhibits submitted by the Feldman Parties in support of their briefing.  The Feldman Parties filed a response.

## A.  Legal Principles

A party must support its factual positions by citing to

---

[77]     See Doc. 260, Order Dated Oct. 2, 2015.

[78]     See Settlement Funding, LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 285, Unopposed Mot. to Dismiss Remaining Cls.

[79]     See Settlement Funding, LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 287, Order Dated Jan. 8, 2016; Doc. 288, Notice of Appeal Dated Feb. 8, 2016; Doc. 290, Notice of Cross Appeal Dated Feb. 22, 2016.

particular evidence in the record.  Fed. R. Civ. P. 56(c)(1).  The court need only consider the cited materials, although it may consider other materials as well.  Fed. R. Civ. P. 56(c)(3). Affidavits supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent evidence.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)).  Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence."  The Federal Rules of Evidence determine whether the summary-judgment evidence is admissible.

Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Only relevant evidence is admissible.  Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Additionally, items of evidence must be authenticated or

16

identified by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.

Hearsay is not admissible evidence. Fed. R. Evid. 802. Hearsay is a statement, not made while testifying in the current litigation, that is offered for "the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

## B. Discussion

The court first addresses the general objection to highlighting. Settlement Funding objects to the highlighting as hearsay but does not explain how highlighting portions of a document, without adding annotations of any sort, can be described as an assertion. The nonbinding district court case that Settlement Funding cites does not answer that question; in fact, the cited case does not state, explicitly or implicitly, that the court there even found the highlighting to be hearsay.[80]

Highlighting portions of a document may arguably be an intentional assertion stating, "This is the portion of the document to which I am referring." See Fed. R. Evid. 801(a). However, highlighting cannot turn an admissible statement within a document into hearsay by calling attention to it. Unlike handwritten annotations, highlighting is not evidence with any bearing on the

---

[80] See Doc. 167, Settlement Funding's Objs. to the Feldman Parties' Summ.-J. Evid. p. 2 (citing Savidge v. Donahoe, No. 3:08-CV-2123, 2013 WL 265070, at *5 (M.D. Pa. Jan. 23, 2013)(unpublished)(stating that, if a particular exhibit is admitted into evidence at trial, the plaintiff would have to provide a copy without handwriting and highlighting and would have to authenticate the document at trial)).

outcome of the case.  Therefore, the court finds no harm in the use of highlighting to direct the court to the relevant portions of the document any more than it finds harm in submitting only cited excerpts of depositions.

Settlement Funding also objects to the highlighting as compromising the authentication of the document.  The court finds that highlighting a document submitted as summary-judgment evidence does not interfere with the authentication requirement of Federal Rule of Evidence 901, which requires only that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

The court **OVERRULES** Settlement Funding's objection to highlighting.

The court now addresses the specific objections one at a time. The court previously ruled on identical objections to three of these objections to the same documents that were filed in connection with the previously decided dispositive motions on Settlement Funding's lien-priority and fraudulent-transfer claims. The court repeats its rulings here.

### 1.   AMY Insurance License

This license was filed as Exhibit B to the Feldman Parties' Traditional Motion.

Settlement Funding objects to this exhibit on the basis that it is misleading because it does not specifically show that AMY is

a property and casualty insurance company.  The court **OVERRULES** the objection.  As noted by the Feldman Parties, the license lists AMY's full name, which includes the designation "Property and Casualty Insurance Corporation."[81]  Whether that is sufficient to prove AMY's status as a property and casualty insurance company is not a matter of admissibility but of evidentiary weight.

### 2.    FinServ Insurance License

This license was filed as Exhibit D to the Feldman Parties' Traditional Motion.

Settlement Funding objects to this exhibit on the basis that it is misleading because it does not specifically show that FinServ is a property and casualty insurance company.  The court **OVERRULES** the objection.  As noted by the Feldman Parties, the license lists FinServ's full name, which includes the designation "Casualty Corp."[82]  Whether that is sufficient to prove FinServ's status as a property and casualty insurance company is not a matter of admissibility but of evidentiary weight.

### 3.    Inter-Creditor Agreement

This agreement was filed as Exhibit Q to the Feldman Parties' Traditional Motion.

Settlement Funding argues that the document is not admissible

---

[81]    See Doc. 152-5, Ex. B to the Feldman Parties' Traditional Mot., AMY's Ins. License p. 1.

[82]    See Doc. 152-7, Ex. D to the Feldman Parties' Traditional Mot., FinServ's Ins. License p. 1.

because it was not produced until it was submitted as an exhibit in support of the Feldman Parties' dispositive motions. This document should have been produced pursuant to court order.[83] The Feldman Parties claim that the document was produced as Bates Numbers 000207-000211 on March 4, 2010, and they attach, as an exhibit to their response to the objections, what they purport to be "the email transmitting the document, LexisNexis Time Matters record of the email, bates-stamped copy of the Inter-Creditor Agreement."[84] The court **SUSTAINS** the objection.

The email referred to documents produced pursuant to "Judge Hancock's order," but did not specify that the Inter-Creditor Agreement was among them.[85] Likewise, the record of the email does not specify that the Inter-Creditor Agreement was part of the production.[86] Most importantly, though, the copy of the agreement submitted with the email and record was not Bates-stamped as represented by the Feldman Parties.[87]

The court finds no reliable evidence that the agreement was produced prior to summary judgment practice. A document not

---

[83]   See Settlement Funding LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 162, Order Dated Jan. 22, 2014.

[84]   Doc. 228, the Feldman Parties' Resp. to Settlement Funding's Objs. to Alter Ego Summ. J. Evid. p. 4.

[85]   Doc. 228-3, Ex. 3 to the Feldman Parties' Resp. to Settlement Funding's Objs. to Alter Ego Summ. J. Evid., Email Dated Mar. 4, 2010.

[86]   Id., Time Matters Email.

[87]   Id., Inter-Creditor Agreement.

previously produced under order of the court cannot be used in support of or in opposition to motions for summary judgment.  See Fed. R. Civ. P. 37(b)(2) (stating that the court may award the sanction of excluding a party from introducing designated matters in evidence when that party failed to obey a court order).[88]

### 4. AMY and FinServ Balance Sheets

The AMY balance sheet from 2010 was filed with many other AMY documents at Exhibit CC to the Feldman Parties' Traditional Motion. The FinServ balance sheets from 2007 through 2010 were filed with many other FinServ documents at Exhibit DD to the Feldman Parties' Traditional Motion.

Settlement Funding argues that the balance sheets are unreliable because they all were labeled "Unaudited – For Management Purposes Only"[89] and that they contain hearsay and assume facts not in evidence.  The Feldman Parties argue that the court should disregard the objections because Settlement Funding fails to explain them.  The court **OVERRULES** the objections.

The reliability of the unaudited balance sheets is a matter of evidentiary weight rather than admissibility.  Settlement Funding offers no explanation for either of its other two objections.  The

---

[88]    Settlement Funding additionally argues that the document contains hearsay. The court need not address that objection.

[89]    Doc. 157-4, Ex. CC to the Feldman Parties' Resp. to Settlement Funding's Objs. to Alter Ego Summ. J. Evid., AMY Balance Sheet Dated Dec. 31, 2010; Doc. 158-4, Ex. DD to the Feldman Parties' Resp. to Settlement Funding's Objs. to Alter Ego Summ. J. Evid., FinServ Balance Sheets Dated Dec. 31, 2007, Dec. 31, 2008, Dec. 31, 2009, Dec. 31, 2010.

balance sheets are out-of-court statements; however, the only cite in the Feldman Parties' motion to them asserts that they demonstrate AMY and FinServ's separateness, respectively. The use of the balance sheets for that purpose falls outside the definition of hearsay because they were not cited for the truth of the matters asserted. Without the benefit of an explanation of the objection that they assume facts not in evidence, the court finds that Settlement Funding fails to meet its burden.

**5.   Affidavit of Feldman Dated March 24, 2015**

This affidavit was filed as Exhibit 1 to the Feldman Parties' Traditional Motion.

Settlement Funding objects to the affidavit, arguing that it contains six statements that are conclusions of law, that Feldman has not been qualified as an expert to testify on the matters within the affidavit, that portions of the affidavit are incorrect, misleading, contrary to Feldman's prior testimony, and/or not the best evidence and/or assume facts not in evidence. The Feldman Parties argue that Settlement Funding has made no showing that the testimony provided by Feldman contains subjects the are reserved for experts. They also contend that Settlement Funding makes blanket not-the-best-evidence objections that are not specific and fails to identify which documents provide the best evidence. The court **OVERRULES** the objections.

Feldman stated that he was a former officer of Rapid and

remained a corporate representative for purposes of his affidavit. Therefore, Feldman need not be qualified as an expert to speak to issues related to Rapid's business.  Feldman is competent to testify, as matters of fact, that he was never Rapid's general partner and never acted as such.  The court recognizes Feldman's competency to address matters of contract, equity in property, inter alia, from a factual perspective. Statements regarding Rapid's security interests, perfection, priority, statutory rights and liens, equity, property transfers are within his personal knowledge of the facts from Rapid's perspective.  They are not legal conclusions, and the court has not relied on Feldman to explicate legal authority.  Feldman's use of the phrase "judgment became final" in reference to the state court actions does not appear to assert a legal determination, and the court does not rely on it as such.

The paragraphs to which Settlement Funding objects as not the best evidence cite to the documents about which Feldman offers his opinion.  The documents are the best evidence of their contents and meaning, but Feldman's testimony is also helpful in understanding how they were viewed and used by the Feldman entities.

Settlement Funding complains that several paragraphs assume facts not in evidence but fails to point out what facts are not in evidence or explain why Feldman's sworn testimony cannot put those facts in evidence.  The statements from paragraphs eighteen,

twenty-two, twenty-three, and twenty-four to which Settlement Funding objects are all within the personal knowledge of a current or former officer and/or a corporate representative of each of the companies.

Settlement Funding's objection to Feldman's statements about how long RSL has been operating as contrary to his prior testimony is not as clear cut as Settlement Funding suggests and should be tested on cross-examination at trial.[90]

### III.  Motions for Summary Judgment

The Feldman Parties move for summary judgment on claims of partnership liability, veil-piercing/alter ego, and sham to perpetrate a fraud.

### A.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

---

[90]    In his deposition, Feldman stated that Substram, Inc., changed its name to RSL Funding Corp. in order to get into the "lottery or annuity business" and that RSL Funding Corp. had not done any business as of August 2003.  Doc. 167-1, Ex. 1 to Settlement Funding's Objs. to the Feldman Parties' Summ.-J. Evid. Filed with Mots., Dep. of Feldman p. 22.  He also said that RSL Funding Corp. did not enter the structured settlement business until 2008, 2009, or 2010, but he could not remember whether it entered the business before or after the foreclosure of Rapid's property or whether it was called RSL, when it entered the business.  Id. pp. 23-24.  Whereas, in his affidavit, he stated:
> The entity now known as RSL Funding, LLC[,] previously operated under a different name, such being Substram, Inc., and was originally formed as a Texas corporation on November 30, 1995.  In August 2003 its name became RSL Funding Corp., and later RSL Funding, LLC.  To be clear, RSL Funding, LLC[,] dates back to 1995, more than a decade before the filing of this suit now before this Court.
Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶ 6.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian, 954 F.2d at 1131.  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).

If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).  Conclusory allegations, unsubstantiated assertions,

improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown v. City of Hous., Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).

If the evidence would not allow a reasonable jury to decide the dispute in favor of the nonmovant, the dispute is not genuine. See Scott v. Harris, 550 U.S. 372, 380 (2007)(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

**B.   Analysis**

The Feldman Parties' pending motions both argue that Settlement Funding cannot succeed on claims of partnership liability, alter ego, and sham to perpetrate a fraud.  The court begins with partnership liability.  As sham to perpetrate a fraud is not pled as a separate claim but as an avenue for piercing the corporate veil, the court considers the Feldman Parties' arguments on that issue in the discussion on veil piercing/alter ego.

**1.   Partnership Liability**

A general partner can be held liable for the obligations of the limited partnership it serves.  See Tex. Bus. Orgs. Code § 153.152.  A limited partner of a limited partnership is not liable for the obligations of the partnership except under two circumstances: "(1) the limited partner is also a general partner; or (2) in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates

26

in the control of the business." Tex. Bus. Orgs. Code § 153.102(a). The second of the two exceptions allows the imposition of the limited partnership's liability on its limited partner only in favor of "a person who transacts business with the limited partnership reasonably believing, based on the limited partner's conduct, that the limited partner is a general partner." Tex. Bus. Orgs. Code § 153.102(b).

Settlement Funding alleged that Rapid Management and Feldman each were jointly and severally liable with Rapid for Rapid's obligations because Rapid Management was Rapid's general partner and Feldman was its limited partner. The Feldman Parties concede Rapid Management's joint and several liability as the general partner but argue that Feldman cannot be held liable under a partnership-liability theory because he is only a limited partner. Settlement Funding responds that Feldman could be liable if he is "deemed to also be a general partner of Rapid," arguing that evidence exists showing Feldman controlled both Rapid and Rapid Management like a general partner.[91]

The court finds Settlement Funding's argument to lack both factual and legal support. Settlement Funding cites no evidence to show that Feldman was in fact the general partner of Rapid. The evidence shows that Feldman was the limited partner and Rapid Management was the sole general partner. Assuming Settlement

---

[91]   Doc. 166, Settlement Funding's Resp. p. 24.

Funding could marshal sufficient evidence of Feldman's control of Rapid a la a general partner, Settlement Funding still would not satisfy all of the elements required to impute Rapid's liability to him.  The statute requires proof not only that Feldman controlled the business of the limited partnership but that the person to whom Rapid owed an obligation had transacted business with Rapid and reasonably believed Feldman to be the general partner.  Settlement Funding does not allege, much less produce evidence indicating, that it transacted any business with Rapid.  Settlement Funding and Rapid were business competitors.

The case cited by Settlement Funding, <u>Humphreys v. Medical Towers, Ltd.</u>, 893 F. Supp. 672, 689 (S.D. Tex. 1995), does not stand for the proposition that liability may be imputed to a limited partner based solely on evidence that he conducted himself a general partner.  In <u>Humphreys</u>, the person seeking to hold the limited partner liable as a general partner was in an employment relationship with the limited partner and produced evidence of facts that led her to believe he was the general partner.  See <u>id.</u>

Absent evidence showing that Settlement Funding transacted business with Rapid under the belief that Feldman was the general partner, Settlement Funding may not pursue a partnership-liability claim against him.  However, Settlement Funding's claim of partnership liability against Rapid Management survives the summary judgment motions.

## 2. Veil Piercing/Alter Ego

The corporate form is designed to protect shareholders, officers, and directors of a corporation from liability for the business entity's obligations. See SSP Partners v. Gladstrong Invs. (USA) Corp., 275 S.W.3d 444, 451 n.29 (Tex. 2009). The corporate structure and the protections it affords may be disregarded only "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." Id. at 451 (quoting Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986), superseded on other grounds by statute, Tex. Bus. Orgs. § 21.223, as recognized in Spring St. Partners-IV, L.P. v. Lam, 730 F.3d 427, 443 (5th Cir. 2013)). For example, the corporate structure may be ignored if the structure was abused for purposes of organizing and operating a corporation as mere tool or business conduit of another, perpetrating a fraud, evading an existing obligation, creating or perpetrating a monopoly, circumventing a statute, protecting a crime, or justifying wrong. Id. at 451, 454 (quoting Castleberry, 721 S.W.2d at 272).

Piercing the corporate veil allows a creditor to impose debt liability on the persons controlling the debtor.

> The veil-piercing doctrine as applied to corporate alter egos has never been indiscriminately applied to impute liability to arguably responsible bystanders—it is applied to the owners and operators of the firm, including "shareholders, officers, and directors" who otherwise would ordinarily be insulated from liability for corporate obligations.

_Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P._, 417 S.W.3d 46, 56
(Tex. App.—Houston [1st Dist.] 2013, pet. denied]).

Alter ego is one theory that may justify "piercing the
corporate veil and disregarding the corporate fiction." _Burchinal_
_v. PJ Trailers-Seminole Mgmt. Co._, 372 S.W.3d 200, 216-17 (Tex.
App.—Texarkana 2012, no pet.).   The analysis starts with the
relationship between an individual and a corporation or between two
entities, asking whether the corporation was used as a mere tool or
business conduit of the individual or the other business entity.
_SSP Partners_, 275 S.W.3d at 455; _Castleberry_, 721 S.W.2d at 272.
The second half of the analysis asks whether the reliance on
protection afforded by the corporate structure was illegitimate.
See _SSP Partners_, 275 S.W.3d at 455.

In the case of a corporation and an individual, the plaintiff
must show that the unity between the two was so significant that
"the separateness of the corporation ha[d] ceased and holding only
the corporation liable would result in injustice." _Peterson Grp.,_
_Inc._, 417 S.W.3d at 82 (quoting _Tryco Enters., Inc. v. Robinson_,
390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet.
dism'd)).   Indicators of unity include the degree to which
corporate formalities were followed, the degree to which corporate
and individual property were maintained separately, "the amount of
financial interest, ownership, and control" the individual
maintained over the corporation, and whether the corporation was

used for personal purposes. Id. at 82-83 (quoting Tryco Enters., Inc., 390 S.W.3d at 508).

In the case of two corporations, the factors to consider in deciding whether the two were not maintained as separate entities include: "common employees; common offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business name; services rendered by the employees of one corporation on behalf of another corporation; undocumented transfers of funds between corporations; and unclear allocation of profits and losses between corporations." SSP Partners, 275 S.W.3d at 450-51.

Sham to perpetrate a fraud is another theory that may justify piercing the corporate veil. See Spring St. Partners-IV, L.P., 730 F.3d at 443. Tort claimants need only to show constructive fraud. See id. (citing Castleberry, 721 S.W.2d at 273)(noting that, since Castleberry, the Texas Legislature enacted statutes requiring proof of actual fraud relating to contractual obligations). "Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." Zimmerman v. Farias, No. 14-12-00531-CV, 2013 WL 5026248, at *4 (Tex. App.—Houston [14th Dist.] 2013, no pet.)(quoting AmSav Grp., Inc. v. Am. Sav. & Loan Ass'n of Brazoria Cty., 796 S.W.2d 482, 489 (Tex. App.—Houston [14th Dist.]

1990, writ denied)).  In more concrete terms, those in control of the corporation engaged in acts that hindered the corporation's ability to pay its debts, such as siphoning off revenues, selling assets, and starting up a new business with the same shareholders. Id. (citing Love v. State, 972 S.W.2d 114, 120 (Tex. App.—Austin 1998, pet. denied)).

Settlement Funding pled alter ego and sham to perpetrate a fraud in support of piercing the corporate veils of Rapid, the debtor, and Rapid Management, the debtor's general partner, with the intent of imposing liability for Rapid's obligations on RSL, Feldman, FinServ, AMY, and The Feldman Law Firm.[92]  Settlement Funding indiscriminately marshals evidence of the interrelatedness of the Feldman Parties.  En masse, this body of evidence distracts from the real issue.  In order to impose Rapid's liability on any other party, Settlement Funding must pierce Rapid's business structure.  Piercing the veils of RSL, Feldman, FinServ, AMY, and The Feldman Law Firm will get Settlement Funding nowhere in this regard.

As discussed above, Rapid is a limited liability partnership, and only its general partner, Rapid Management, is liable for Rapid's obligations.  Settlement Funding can reach no further by

---

[92]     Settlement Funding's state court pleading also alleged "single business enterprise" as a reason to ignore the corporate forms of RSL and Rapid. See Settlement Funding LLC v. RSL Funding, LLC, Civ. Action No. H-12-2044, Doc. 2-3, Ex. B to Am. Notice of Removal, 2nd Supplemental Pet. p. 4.  The Texas Supreme Court held that the theory of single business enterprise will not support piercing the corporate veil.  See SSP Partners, 275 S.W.3d at 456.

way of a veil-piercing theory.  The Feldman Parties note in their motion that "[n]o need exists in the instant case for an equitable veil-piercing doctrine as applied to the debts of Rapid" because recourse is available against Rapid Management as Rapid's general partner.[93]

Indeed, only two identifiable persons are behind Rapid's veil: Rapid Management and Feldman, and the law prohibits Settlement Funding from reaching Feldman, even under a veil-piercing theory. See Peterson Grp., Inc., 417 S.W.3d at 56 ("Texas courts have uniformly declined to apply the alter-ego theory to pierce a limited partnership's "veil" to impose the entity's liabilities on a limited partner."); Asshauer v. Wells Fargo Foothill, 263 S.W.3d 468, 474 (Tex. App.—Dallas 2008, pet. denied)("[A]lter ego or piercing the corporate veil is inapplicable with regard to a partnership because there is no veil that needs piercing, even when dealing with a limited partnership, because the general partner, as noted is always liable for the debts and obligations of the partnership to third parties.").  As mentioned above, the Feldman Parties concede that Rapid Management is liable for Rapid's obligations.  Settlement Funding need not pierce any veil to reach Rapid Management but cannot reach any other party.

There still remains the question of piercing Rapid Management's corporate veil to impose its liabilities on RSL,

---

[93]     Doc. 152, the Feldman Parties' Traditional Mot. p. 10.

Feldman, FinServ, AMY, and The Feldman Law Firm.  As far as alter ego is concerned, the court must examine Settlement Funding's evidence of a close relationship between Rapid Management and each of those five parties.  The court must apply different factors to analyze the relationship between Rapid Management and Feldman, an individual, than it considers in analyzing the relationship of Rapid Management with any of the business entities.

Settlement Funding points to the following evidence to show a connection between Rapid Management and Feldman:

- Rapid Management was capitalized with $3,500.[94]

- Feldman signed the Fourth Amended and Restated Factoring Loan Agreement on behalf of Rapid Management.[95]

- In December 2009, Feldman directed money to be taken out of Rapid Management's account.[96]

- Feldman signed the Loan Agreement Dated Jan. 1, 2008, on behalf of Rapid Management.[97]

- Feldman is an owner and president of Rapid Management.[98]

--------------------------------------------------

[94]    See Doc. 193, Sealed Ex. 111 to Settlement Funding's Resp., Transfer Ledger for Rapid Mgmt. Corp.

[95]    See Doc. 166-49, Ex. 48 to Settlement Funding's Resp., 4th Am. & Restated Factoring Loan Agreement p. 22.

[96]    See Doc. 175, Sealed Ex. 72 to Settlement Funding's Resp., Dec. 2009 Bank Statement (directing money to be taken out in handwriting).

[97]    See Doc. 177, Sealed Ex. 76 to Settlement Funding's Resp., Loan Agreement p. 20.

[98]    See Doc. 152-2, Ex. 1 to the Feldman Parties' Traditional Mot., Aff. of Feldman Dated Mar. 24, 2015 ¶¶ 2, 3; Doc. 166-36, Ex. 35 to Settlement Funding's Resp., Rapid Mgmt.'s Am. Supplemental Resps. to Settlement Funding's 1st Set of Interrogs. No. 2; Doc. 166-48, Ex. 47 to Settlement Funding's Resp., Dep. of Feldman p. 57; ; see also Doc. 154-5, Ex. S to the Feldman Parties' Traditional Mot., Agreement Dated Dec. 13, 2008 (signing as president of Rapid Management).

These facts do not even begin to show a unity between Feldman and Rapid Management so great that Rapid Management's separate existence ceased.   Most of the facts indicate corporate separateness with Feldman acting in his role as president.   No evidence suggests intermingling of Feldman and Rapid Management's property.   Even if Feldman directed money to be taken out of Rapid Management's account, nothing indicates he moved the money to a personal account.   No evidence suggests that Feldman used Rapid Management for personal purposes.

Settlement Funding cites to the following evidence to show a connection between Rapid Management and AMY:

- Rapid Management pledged certain interests as security for Rapid's loan obligations to AMY.[99]

Settlement Funding cites to the following evidence to show a connection between Rapid Management and The Feldman Law Firm:

- Rapid Management agreed to release and indemnify The Feldman Law Firm (and other business entities not parties to this lawsuit) and its officers, directors, agents, attorneys and affiliates from any claim or cause of action whatsoever in exchange for a credit on the loan balance to Rapid.[100]

- The Feldman Law Firm wrote checks, made deposits, and balanced check books for Rapid Management on a fee basis.[101]

Settlement Funding pointed to no evidence even remotely

---

[99]   See Doc. 166-49, Ex. 48 to Settlement Funding's Resp., Sec. Agreement & Collateral Assignment pp. 1-2.

[100]   See Doc. 154-5, Ex. S to the Feldman Parties' Traditional Mot., Agreement Dated Dec. 13, 2008 p. 1; Doc. 166-48, Ex. 47 to Settlement Funding's Resp., Dep. of Feldman pp. 50-51.

[101]   See Doc. 166-56, Ex. 55 to Settlement Funding's Resp., Rapid Mgmt.'s Resps. to Settlement Funding's 1st Set of Interrogs. No. 6.

suggesting a close relationship between Rapid Management and RSL or between Rapid Management and FinServ.  Settlement Funding has pointed to no evidence of common employees; common offices; centralized accounting; payment of wages by RSL, FinServ, AMY, or The Feldman Law Firm to Rapid Management's employees or vice versa; common business name; services by any one of the companies for Rapid Management or vice versa; undocumented transfers between Rapid Management and RSL, FinServ, AMY, or The Feldman Law Firm; or unclear allocation of profits and losses between corporations.  SSP Partners, 275 S.W.3d at 450-51.

One other point regarding alter ego is that this litigation is not an action to enforce a judgment.  The claims that were consolidated were originally pled with the tortious-interference claim in the state action that became H-12-2044 and is now on appeal.  Settlement Funding's remaining substantive claim is fraudulent transfer.  The court previously determined that RSL, FinServ, AMY, and The Feldman Law Firm were insiders of Rapid, as that term is defined by the Texas Uniform Fraudulent Transfer Act ("TUFTA") and related case law.[102]  As insiders, they are exposed to liability for any fraudulent transfers involving Rapid.[103]  Unfortunately for Settlement Funding, the fraudulent transfer claims against FinServ, AMY, and The Feldman Law Firm are barred by

---

[102]    See Doc. 252, Mem., Recommendation, & Order p. 53.

[103]    See id. pp. 47-56.

36

TUFTA's statute of repose, as explained in a prior memorandum.[104]
Settlement Funding cannot avoid that result and reach those parties
on the fraudulent-transfer claim through veil-piercing.   Rapid,
Rapid Management, RSL, and Feldman remain parties to the
fraudulent-transfer claim for their own actions.   Either Settlement
Funding will prevail on the fraudulent-transfer claim, in which
case those parties will be directly liable, or it will not prevail
against one or more of those parties, in which case Settlement
Funding cannot revive the claims under a theory of alter ego.

Settlement Funding's evidence of sham to perpetrate a fraud
relates entirely to Rapid's distribution of assets to its alleged
lenders and RSL's continuation of Rapid's business.   That evidence
is relevant to its fraudulent transfer claim.   For the reason
explained above (Rapid's structure as a limited partnership), veil-
piercing under the sham to perpetrate a fraud also is not available
to reach beyond Rapid Management.   Settlement Funding highlights no
evidence related to Rapid Management that would support piercing
its corporate veil under the sham to perpetrate a fraud theory.
For example, nothing suggests any siphoning off Rapid Management's
corporate revenues, selling its assets, or starting a new business
with the same shareholders to take over its business.

Settlement Funding's veil-piercing theories do not survive
summary judgment.

---

[104]   See id. pp. 56-59.

## IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that each of the Feldman Parties' motions be **GRANTED IN PART AND DENIED IN PART.** Only Settlement Funding's claim of partnership liability against Rapid Management survives the motions addressed in this memorandum.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**NO EXTENSIONS WILL BE GRANTED ON THE DEADLINES FOR FILING OR RESPONDING TO OBJECTIONS.**

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 29th day of February, 2016.

Nancy K. Johnson
United States Magistrate Judge